SUSAN KOEHLER SULLIVAN, State Bar No. 156418
*Susan.Sullivan@clydeco.us*
ALEC H. BOYD. State Bar No. 161325
*Alec.Boyd@clydeco.us*
BRETT C. SAFFORD, State Bar No. 292048
*Brett.Safford@clydeco.us*
RUIMIAO DU, State Bar No. 345687
*Ruimiao.Du@clydeco.us*
CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

ROBERT MANGINO (*pro hac vice*)
*Robert.Mangino@clydeco.us*
CLYDE & CO US LLP
340 Mt. Kemble Avenue, Suite 300
Morristown, NJ 07960
Telephone:   (973) 210-6700

Attorneys for Plaintiff
SOMPO AMERICA INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| SOMPO AMERICA INSURANCE COMPANY (formerly known as Sompo Japan Insurance Company of America), a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>LX HAUSYS AMERICA, INC. (formerly known as LG Hausys America Inc.), a New Jersey corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 2:25-cv-02832-JFW-MAA<br>Hon. John F. Walter<br>Courtroom 7A<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (Fed. R. Civ. P. 12(b)(6))**<br><br>Hearing Date: October 27, 2025<br>Time:          1:30 p.m.<br>Courtroom:   7A<br><br>[Filed concurrently with Declaration of Alec H. Boyd, Request for Judicial Notice and [Proposed] Order of Dismissal of Counterclaim]<br><br>Complaint Filed:    March 18, 2024<br>Discovery Cutoff:   None Set<br>Motion Cutoff:      None Set<br>Pretrial Conf. Date: None Set<br>Trial Date:          None Set |

41595792.9

1

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

TO DEFENDANT LX HAUSYS AMERICA, INC. AND TO ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday October 27, 2025 at 1:30 p.m. in Courtroom 7A of the United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, Plaintiff SOMPO AMERICA INSURANCE COMPANY (formerly known as Sompo Japan Insurance Company of America) ("Plaintiff" or "Sompo"), by and through its attorney of record, hereby moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), collectively and/or separately, the Counterclaims asserted by Defendant LX HAUSYS AMERICA, INC. (formerly known as LG Hausys America Inc. ("Defendant" or "Hausys"), including those for (1) Declaratory Relief – Duty to Defend, (2) Declaratory Relief – Duty to Indemnify, (3) Breach of Contract – Duty to Defend, (4) Breach of Contract – Duty to Indemnify, and (5) Breach of the Covenant of Implied Covenant of Good Faith and Fair Dealing – Bad Faith.

Sompo seeks dismissal of each and/or every of these Counterclaims because Defendant has failed to adequately allege facts sufficient to state a claim upon which relief can be granted, each and every Counterclaim fails because coverage is precluded by application of the subject insurance policies' Silica Or Silica-Related Dust Exclusion, and absent coverage no duty to defend arises under the terms of the pertinent Insuring Agreement and no valid claim for Breach of the Covenant of Implied Covenant of Good Faith and Fair Dealing – Bad Faith can be stated.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of the Alec Boyd, the Request for Judicial Notice, the arguments made in reply to any opposition to this Motion, and on such oral argument and evidence that may be presented at the hearing, and the papers, records, and pleadings offered in support of this motion or on file in this matter herein or for which judicial notice is requested.

41595792.9

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 15, 2025.

Dated:  September 24, 2025          CLYDE & CO US LLP

By:  */s/ Susan Koehler Sullivan*

Susan Koehler Sullivan / Alec H. Boyd
Brett C. Safford / Ruimiao Du
Robert Mangino (*pro hac vice*)
Attorneys for Plaintiff
SOMPO AMERICA INSURANCE COMPANY

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

3

**TABLE CONTENTS**

**PAGE**

I.      INTRODUCTION ...................................................................................8

II.     THE ALLEGATIONS OF THE COUNTERCLAIM AND JUDICIALLY NOTICEABLE FACTS ...........................................10

    A.    The Policies.......................................................................................10

    B.    The Allegations of the Counterclaim..................................................12

    C.    The Allegations of the Quiroz TAC....................................................13

III.    STANDARD ON MOTION TO DISMISS ........................................20

IV.     ARGUMENT ......................................................................................21

    A.    The Silica/Dust Exclusion Precludes Coverage for Claims Arising Out of the *Alleged* Inhalation or Ingestion of "Silica" or "Silica-Related Dust"...................................................................21

    B.    The Allegations of the Counterclaim, TAC, and Silica Lawsuits Establish Application of the Silica/Dust Exclusion .............23

    C.    Absent the *Quiroz* Example, the Counterclaim Fails .........................24

    D.    The Court Cannot Accept as True the Allegations of the Counterclaim Regarding the TAC Which Are Refuted by the TAC....25

        1.    Standard ..................................................................................25

        2.    The TAC Does Not Allege Quiroz Was "Separately Exposed" to Metals in Artificial Stone......................................26

        3.    The Counterclaim's Paragraph 21 Misstates That *Quiroz* Alleges Exposure to VOCs "Wholly Apart From Exposure to Silica"..............................................................29

        4.    Paragraph 22 of the Counterclaim Must Also Be Disregarded as Contrary to the Allegations of the TAC ...........31

        5.    The Counterclaim's References to *Solano-Claustro* and *Garcia-Rosas* Cannot Cure its Deficiencies .......................31

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

4

E.  Because Coverage is Precluded by the Silica/Dust Exclusion, All of Hausys' Counterclaims Fail .......................................................... 32

V.  CONCLUSION ................................................................................................. 32

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

# TABLE OF AUTHORITIES

**PAGE**

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

**Cases**

*Acceptance Ins. Co. v. Syufy Enterprises*
  69 Cal.App.4th 321 (1999) ...................................................................................22

*AIU Ins. v. Superior Court*
  51 Cal.3d 807 (1990) ......................................................................................20, 22

*Ashcroft v. Iqbal*
  556 U.S. 662, 129 S.Ct. 1937 (2009)................................................................20, 25

*Bank of the West v. Superior Court*
  2 Cal.4th 1254 (1992) ........................................................................................20

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544, 127 S.Ct. 1955 (2007)................................................................20, 25

*Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*
  572 F.3d 663 (9th Cir. 2009) ...............................................................................11

*Certain Underwriters at Lloyd's of London v. Superior Court*
  24 Cal.4th 945 (2001) ......................................................................................21, 22

*Coto Settlement v. Eisenberg*
  593 F.3d 1031 (9th Cir. 2010) .............................................................................13

*Davis v. Farmers Ins. Group*
  134 Cal.App.4th 100 (2005) ................................................................................22

*Hanover American Insurance Co. v. Francini, Inc.*
  2025 WL 1090925 (C.D. Cal. Mar. 27, 2025).......................................8, 21, 22, 32

*Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*
  59 Cal.4th 277 (2014) ..........................................................................................9

*Horace Mann Ins. Co. v. Barbara B.*
  4 Cal.4th 1076 (1993) .......................................................................................9, 21

41595792.9

6

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

*In re Gilead Scis. Secs. Litig.*

536 F.3d 1049 (9th Cir. 2008) .................................................................................26, 31

*Mauro v. Ohio Security Insurance Co.*

2021 WL 5040265 (E.D. Penn. Oct. 29, 2021) .......................................................22

*Montrose Chem. Corp. of Cal. v. Superior Court*

6 Cal.4th 287 (1993) ...............................................................................................21

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*

187 Cal.App.4th 766 (2010) ................................................................................20, 32

*N. Star Int'l v. Ariz. Corp. Comm'n*

720 F.2d 578 (9th Cir. 1983) ..................................................................................20

*Rosen v. State Farm Gen. Ins. Co.*

30 Cal.4th 1070 (2003) ...........................................................................................23

*Sprewell v. Golden State Warriors*

266 F.3d 979 (9th Cir. 2001) ...............................................................................25, 31

*Waller v. Truck Ins. Exch., Inc.*

11 Cal.4th 1 (1995) ...............................................................................................20, 32

**State Statutes and Codes**
Cal. Civ. Code § 1639.................................................................................................21

**United States Codes**
Federal Rule of Civil Procedure 12(b)(6).........................................................1, 2, 20

41595792.9

7

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Counterclaimant LX Hausys America, Inc. ("Hausys"), has been sued in over 180 lawsuits by underlying plaintiffs claiming they developed silicosis and related bodily injuries resulting from their work fabricating stone products containing silica for use in homes and businesses (the "Silica Lawsuits").[1] Hausys is a manufacturer/seller of stone products and one of the defendants named in the Silica Lawsuits.

Sompo America Insurance Company ("Sompo") issued Commercial General Liability ("CGL") policies under which Hausys seeks coverage for the Silica Lawsuits (the "Policies"). [Doc. 23, p. 14:26-28, ¶ 4.] However, each of the Policies contain a "Silica Or Silica-Related Dust Exclusion"[2] (hereinafter "Silica/Dust Exclusion") which bars coverage for "Bodily Injury arising, in whole or in part, out of the actual, *alleged*, threatened or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust.'" [Doc. 1-1, p. 60 (emphasis added).] "Silica-related dust" means a mixture or combination of silica and other dust or particles, and is generated during the fabrication process. [Doc. 1-1, p. 60; Doc. 23, p. 14:21-25, ¶ 3.]

As discussed herein, the Silica Lawsuits all arise from, in whole or in part, alleged exposure to silica and silica-related dust, resulting in claimants contracting silicosis and other related conditions.[3] [Doc. 23, pp. 17:18-18:16, ¶¶ 18-20.] As a result, Sompo initiated this lawsuit seeking a declaratory judgment that its Policies do not provide coverage for the Silica Lawsuits.

---

[1] Counterclaim Ex.1 [Doc. 23-1] lists Silica Lawsuits. Hausys pleads all such suits "at issue are pending in California state courts …." [Doc. 23, p. 14:24-25, ¶ 3.]

[2] Endorsement CG 21 96 03 05 (© ISO Properties, Inc., 2004) to each of the Policies. [Docs. 1-1, p. 60; 1-2, p. 101; 1-3, p. 103; 1-4, p. 146; 1-5, p. 148; 1-6, p. 152; 1-7, p. 62; 1-8, p. 138; 1-9, p. 159; 1-10, p. 164; 1-11, p. 67; 1-12, p. 70.]

[3] Silicosis "is caused by silica inhalation." See, e.g., *Hanover American Insurance Co. v. Francini, Inc.*, 2025 WL 1090925, *5 (C.D. Cal. Mar. 27, 2025).

41595792.9                                        8

The determination of the "duty to defend" under a policy is made, in the first instance, by comparing the allegations of the underlying complaint with the policy terms. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993). Further, the determination of whether or not there is a duty to defend is made at the outset of the litigation and is not dependent on facts or discovery that may be litigated at a later date. *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal.4th 277, 286 (2014)).

In Hausys' Counterclaim to Sompo's Complaint, Hausys asserts that the Silica Lawsuits generally allege Hausys "is liable for bodily injuries allegedly caused by alleged exposure to harmful substances allegedly present in stone products allegedly manufactured by LX Hausys." [Doc. 23, p. 17:18-22, ¶ 18.] Hausys further alleges that the litigation captioned *Cesar Manuel Gonzalez Quiroz v. American Marble & Onyx Company, Inc., et al.*, Los Angeles Superior Court Case No. 24STCV01477 ("*Quiroz*") serves as an example of what the underlying actions generally allege. [Doc. 23, p. 17:23-18:16, ¶¶ 19-20.] In fact, the allegations in *Quiroz* are the only allegations quoted or cited to in the Counterclaim.

Sompo accepts Hausys' allegations that *Quiroz* exemplifies the allegations in the Silica Lawsuits for purposes of this Motion. Whether a defense obligation exists per the Counterclaim may therefore be determined by comparison of the *Quiroz* allegations to the policy language.[4] Because any comparison of *Quiroz* and the other Silica Lawsuits leads to the conclusion that coverage is precluded by the Silica/Dust Exclusion, Sompo respectfully requests that the Court grant its Motion to Dismiss.

---

[4] As discussed below, Hausys' Counterclaim refers to but does not cite the allegations of two other Silica Lawsuits. Sompo provides the operative pleadings in all three matters in its Request for Judicial Notice to the Motion so as to be overinclusive with regard got any potential allegations in the Counterclaim.

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

## II.    THE ALLEGATIONS OF THE COUNTERCLAIM AND JUDICIALLY NOTICEABLE FACTS

### A.    The Policies

Sompo issued primary level CGL Policies to Hausys for the 2011-2012 to 2016-2017 and 2019-2020 to 2024-2025 Policy Periods. [Docs 1-1 to 1-12.] The first two Policies utilize an earlier version of the CGL form than the remaining policy periods, but all Policies contain Insuring Agreements stating in part:[5]

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABLITY**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. ….

[See, e.g., Docs 1-1, p. 30 and 1-3, p. 60.]

All of the Policies also contain the "Silica Or Silica-Related Dust Exclusion" endorsement (CG 21 96 03 05 © ISO Properties, Inc., 2004), which states, in part:

> A. The following exclusion is added to **Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

---

[5] Docs 1-1 and 1-2 contain Commercial General Liability Coverage Form CG 00 01 12 07 (© ISO Properties, Inc., 2006). Docs 1-3 to 1-12 contain Commercial General Liability Coverage Form CG 00 01 04 13 (© Insurance Services Office, Inc., 2012).

41595792.9

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

2.  Exclusions

This insurance does not apply to:

**Silica Or Silica-Related Dust**

a.  "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

b.  "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

c.  Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

. . .

C.  The following definitions are added to the **Definitions** Section:

1.  "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2.  "Silica-related dust" means a mixture or combination of silica and other dust or particles.

[See, e.g., Doc. 1-1, p. 60.]

The policies on file as Documents 1-1 to 1-12 are admitted to be authentic [Doc 23, p. 44:4-6, ¶4], and may be considered by this court. *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n. 1 (9th Cir. 2009).

## B.     The Allegations of the Counterclaim

Hausys' asserts that Sompo owes a duty to defend and indemnify it against the Silica Lawsuits despite the Silica/Dust Exclusion. It asserts counterclaims for (1) Declaratory Relief–Duty to Defend, (2) Declaratory Relief–Duty to Indemnify, (3) Breach of Contract–Duty to Defend, (4) Breach of Contract–Duty to Indemnify, and (5) Breach of the Covenant of Implied Covenant of Good Faith and Fair Dealing.

To support these counterclaims, Hausys focuses solely on the 468-page *Quiroz* Third Amended Complaint ("TAC") as an "example" of what Silica Lawsuits "generally allege." [Doc. 23, p. 17:18-18:16, ¶¶ 19-20.] This is a reasonable approach since the more than 180 Silica Lawsuit complaints (all filed by the same two law firms) average more than 300 pages each. Sompo agrees that for this motion *Quiroz's* allegations are properly treated as exemplary of the underlying Silica Lawsuits which "generally allege, among other things, that LX Hausys is liable for bodily injuries allegedly caused by alleged exposure to harmful substances allegedly present in stone products allegedly manufactured by LX Hausys." [Doc. 23, p. 17:18-20, ¶ 18.] Indeed, the Counterclaim directly alleges the TAC is an example:

> 19. By way of example, in [*Quiroz*], plaintiff named LX Hausys and 72 other defendants which allegedly were and/or are manufacturers, suppliers, distributors, importers, brokers, and/or contractors of industrial stone products. Plaintiff therein alleges that between 2008 and 2023 he "cut, ground, drilled, edged, polished fabricated and/or installed . . . artificial stone and natural stone products to become countertops in kitchens and bathrooms." *Quiroz* Third Amended Complaint ("TAC") ¶ 110. He further alleges that in performing that work, he was allegedly "exposed to and inhaled stone dust containing silica and other toxins and carcinogens," including "aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

12

vanadium" as well as "volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene) emitted from these products." *Quiroz* TAC ¶ 111. As a result of that alleged exposure, plaintiff allegedly "developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage." *Quiroz* TAC ¶ 112. On information and belief, plaintiff seeks damages in excess of $19 million.

20. Plaintiffs in most if not all of the other Bodily Injury Lawsuits make allegations similar to those made in *Quiroz* with respect to, inter alia, alleged lung damage caused by alleged exposure to silica, metals and/or volatile organic compounds in stone products while working at fabrication workshops and localized areas such as individual kitchens and bathrooms. ….

[Doc. 23, pp. 17:23-18:16, ¶¶ 19-20.]

### C.    The Allegations of the Quiroz TAC

"On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The Counterclaim relies on the allegations of the TAC to support its claim for coverage for the Silica Lawsuits therefore the TAC's allegations should be considered.

Hausys also mentions two other Silica Lawsuits without quoting or citing to their allegations, or denoting them as examples, "the *Solano-Claustro*[6] and *Garcia-*

---

[6] *Rodolfo Garcia-Rosas et al. v. Architectural Surfaces, Inc., et al.*, Superior Court for the State of California for the County of Los Angeles Case No. 22 STCV 39957.

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

13

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

*Rosas Actions*[7]." [Doc. 23, p. 16:2-4, ¶ 10.] The amended complaints tendered to Sompo for these two actions [Exhibits B and C] also support that *Quiroz* is an accurate exemplar of the Silica Lawsuits because they contain equivalent or identical allegations to those in the TAC. Below are exemplar allegations from the *Quiroz* TAC, with additional cites to the same allegations contained in the *Solano-Claustro* and *Garcia-Rosas Actions*:

111.     Throughout the course of his work, Plaintiff, [ ] QUIROZ, worked with inherently hazardous stone products manufactured, imported, supplied, distributed, contracted, and/or brokered, by the named Defendants and Does 1-100. Plaintiff, … ***QUIROZ, was thereby exposed to and inhaled stone dust containing silica and other toxins and carcinogens, as well as artificial stone dust containing respirable crystalline silica*** (including quartz and cristobalite), ***metals*** (including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium) ***and volatile organic compounds from polymeric resins and other binders*** (including phthalic anhydride, benzene, ethylbenzene, and toluene) emitted from these products.[8]

112.     ***As a direct and proximate result of his exposure to silica, metals and other toxins*** within said stone products manufactured, distributed, supplied, contracted, and/or brokered by

---

[7] *Wendy Viridiana Solano Claustro et al. v. ADB Global Trade, LLC, et al.*, Superior Court for the State of California for the County of Los Angeles, Case No. 23STCV11602.

[8]     Unless otherwise noted, all ***bolded italics*** in the quotes are added by Sompo for emphasis.

41595792.9                                                14

Defendants, Plaintiff, … *QUIROZ, developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-related disease*s *such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma)*.

[Ex. A, pp. 56:21-57:9, ¶¶ 111-112; Ex. B, p. 48:8-19, ¶¶ 61-62; Ex. C, p. 23:3-17, ¶¶ 35 and 36.]

116.    Plaintiff, … QUIROZ, was first *diagnosed with silicosis* in late December 2023. Prior to that time, Plaintiff, … QUIROZ, did not discover, and could not reasonably have discovered, that he had been injured *and was suffering from silicosis*, the toxic nature of his injuries and disease, their cause by Defendants, or Defendants' wrongdoing. The pathological effect of Plaintiff's disease occurred without perceptible trauma and Plaintiff was blamelessly ignorant of its cause. It was not until late December 2023 that Plaintiff, … QUIROZ, was aware he had sustained any appreciable injury.

[Ex. A, p. 58:5-12, ¶ 116; Ex. B, pp. 48:23-49:2, ¶¶ 63; Ex. C, p. 24:5-11, ¶ 38.]

122.    At all material times hereto, Defendants fraudulently concealed from Plaintiff, … QUIROZ, that *their stone products were toxic and that they contained silica, metals and other toxins that cause fibrotic lung disease upon inhalation*.

[Ex. A, p. 59:15-17, ¶ 122; Ex. B, p. 49:12-16, ¶ 66; Ex. C, p. 25:2-4, ¶ 42.]

124.    Defendants' concealment was sufficiently complete that Plaintiff, … QUIROZ, did not know, nor could he

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

have known, earlier than late December 2023, of Defendants' culpability, that he had sustained toxic injuries, that *the stone products to which he exposed had caused his silicosis*, or that he had causes of action arising from his injuries.

[Ex. A, p. 59:22-25, ¶ 124; Ex. B, p. 49:23-27, ¶ 69; Ex. C, p. 25:8-13, ¶ 44.]

134.    By the mid-1930s it was well known to industry that *silicosis (earlier variously called miner's asthma, potter's rot, or phthisis) is an occupational disease caused by the inhalation of tiny particles of quartz dust in the lungs*. "Village of the Living Dead," 121 Literary Digest 6 (1936).

[Ex. A, p. 61:1-3, ¶ 134; Ex. B, p. 51:2-4, ¶ 79; Ex. C, p. 27:1-3, ¶ 54.]

151.    Artificial stone was invented in the 1970s by Marcello Toncelli, who founded Breton SpA, an Italian company, at Castello di Godego in the province of Treviso, Italy. Breton obtained patents for vibro-compression under vacuum and *a mixture of fragmented stone or silica dust with a polyester resin binder* made of styrene monomer and anhydrides.

152.    *The basic raw material and major constituent of most artificial stone products is quartz, i.e., crystalline silica.*

[Ex. A, p. 64:6-11, ¶¶ 151-152; Ex. B, p. 54:6-11, ¶¶ 96-97; Ex. C, p. 30:6-11, ¶ 71-72.]

158.    Today artificial stone today [sic] is manufactured [by] about 30 companies throughout the world: … LX Hausys (South Korea)….

[Ex. A, p. 64:20-24, ¶¶ 158; Ex. B, p. 54:20-24, ¶ 103 Ex. C, p. 30:20-23, ¶ 78.]

163.    The first case of *artificial stone-induced silicosis* was seen in 1997 by physicians at the National Lung Transplantation Center in Israel. This worker was exposed to

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

16

Caesarstone, *developed silicosis*, and underwent lung transplantation. Kramer MR, et al., "Artificial Stone Silicosis: Disease Resurgence Among Artificial Stone Workers," Chest 2012; 142(2):419-424.

[Ex. A, p. 66:3-6, ¶ 163; Ex. B, p. 55:22-25, ¶ 108; Ex. C, p. 31:22-25, ¶ 83.]

177. In a news report by Lolita Lopez published July 9, 2024, according to the California Department of Public Health, *there have been 154 confirmed cases of silicosis related to engineered stone, including at least 13 deaths, as of June 10, 2024, with Los Angeles County reporting 92 cases*. Lolita Lopez, "Emerging health concern." [sic] Potentially deadly lung disease linked to engineered countertops," NBC4 I-Team and Telemundo 52 Investiga (July 9, 2024).

[Ex. A, p. 70:10-14, ¶ 177.]

979. On June 20, 2015 LG Hausys America, Inc. issued a Safety Data Sheet for Viatera® (Engineered Stone), which it described as an agglomerate of natural quartz and polyester resin. In Section 3 of this Safety Data Sheet the company identified two hazardous ingredients: *Quartz (>90%)* and Pigmented cured polyester (<10%).

980. Section 2 of the Safety Data Sheet, regarding Hazards identification, provided two hazard statements: "May cause cancer" and "Causes damage to organs through prolonged or repeated exposure." *The first statement is misleading because it suggests the product is not known to cause cancer, although it contains at least 90% crystalline silica, which is a known human carcinogen and was recognized as such by the International Agency for Research on Cancer in 1997*. The second statement is

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

17

also misleading, because it does not specify the duration of the "prolonged" exposure or the number of exposures that constitute "repeated" exposure that causes damage to organs. Workers therefore cannot know whether they must be exposed to the product for weeks, months, years or decades, or must be exposed hundreds, thousands, or tens of thousands of times to suffer organ damage. The statement is also misleading, because prolonged exposure suggests exposure of many years resulting in chronic disease, although *artificial stone workers typically develop acute silicosis in less than 5 years or accelerated silicosis after 5 to 10 years of exposure*. *The hazard statements are also deficient because they do not mention silicosis as a health hazard of the product, although it is the major health hazard of the product. Indeed, the word "silicosis" does not appear in the entire Safety Data Sheet, even though the product contains more than 90% crystalline silica*. This constitutes a gross failure to warn of the health hazards of the product that violates the Hazard Communication Standard.

[Ex. A, pp. 336:19-337:11, ¶¶ 979-980; Ex. B, p. 173:7-23, ¶¶ 350-351; Ex. C, pp. 106:19-107:11, ¶¶ 264-265.]

986.    On January 17, 2020 LX Hausys America, Inc. issued a new Safety Data Sheet for Viatera (Engineered Stone). In Section 3 of this Safety Data Sheet, LX Hausys identified three ingredients of the product: Crystalline Silica (Quartz) (>93%), Pigmented cured polyester (<10%), and Polymethylmethacrylate (Polyester Resin Solution) (<10%). *Like its 2015 Safety Data Sheet, this revised Safety Data Sheet does not mention the hazard of silicosis. ….*

[Ex. A, p. 339:19-27, ¶ 986; Ex. B, p. 176:11-19, ¶ 357; Ex. C, p. 109:20-28, ¶ 271.]

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

18

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

1285.    ***Defendants failed to adequately warn Plaintiff***, [] QUIROZ, of the toxic hazards of their stone products and failed to provide adequate instructions to Plaintiff, … QUIROZ, how to safely use their products ***so as to prevent him from developing and suffering from silicosis and other disease***.

1286.    Defendants, knew, or should have known, that the aforementioned stone products when used as intended, and/or foreseeably misused, ***would result in the indiscriminate release of toxic and carcinogenic dust, and exposure to "exposed persons," including plaintiff herein***.

1287.    Plaintiff used, or has been otherwise exposed to, stone products referred to herein in a manner that was reasonably foreseeable and from the intended use of the stone products.

[Ex. A, p. 439:5-13, ¶¶ 1285-1287; Ex. B, pp. 195:7-17, ¶¶ 414-416; Ex. C, p. 129:13-25, ¶¶ 338-341.]

### Plaintiff's Exposure to Defendants' Stone Products

1305. Plaintiff, … QUIROZ, ***was exposed to each of Defendants' products***, including those products manufactured, distributed, contracted, brokered and supplied by Doe Defendants as alleged above, ***and to silica, metals and other toxins contained therein*** and released therefrom as alleged above.

### Plaintiff's Silicosis, Pulmonary Fibrosis, and Other Related Injuries

1306.    As a result of Plaintiff, [ ] QUIROZ's ***exposure to each of Defendants' stone products, silica, metals and other toxins entered Plaintiff … QUIROZ's body and caused Plaintiff to suffer from specific illnesses, to wit, silicosis, pulmonary***

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

*fibrosis, and related medical conditions*, as set forth in more detail herein.

1307.    Each of Defendants' *stone products contained silica, toxic metals and other fibrogenic substances, that entered Plaintiff … QUIROZ's body and were substantial factors in causing, prolonging, and aggravating his silicosis and his related and consequential injuries*.

1308.    *As a direct and proximate result of Defendants' negligence as alleged herein, Plaintiff, CESAR MANUEL GONZALEZ QUIROZ, suffers from silicosis and related injuries*

[Ex. A, p. 449:7-16, ¶¶ 1305-1308; Ex. B, p. 200:13-15 and 200:19-201:1, ¶¶ 422, 424-426; Ex. C, pp. 130:28-131:15, ¶¶ 350-355.]

## III.    <u>STANDARD ON MOTION TO DISMISS</u>

"The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). The Counterclaim must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953 (2009). If the Counterclaim does not allege factual allegations which "raise a right to relief above the speculative level," it fails. *Twombly*, 550 U.S. at 555.

An insurance policy is a contract between an insurer and an insured. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992). Thus, "interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995). "Insurance contracts are to be interpreted . . . in the same manner as any other contract, giving effect to the mutual intention of the parties." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal.App.4th 766, 777 (2010). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *AIU Ins. v. Superior Court*, 51 Cal.3d 807, 822 (1990); accord Cal. Civ.

41595792.9

Code § 1639.

## IV.   ARGUMENT

### A.   The Silica/Dust Exclusion Precludes Coverage for Claims Arising Out of the *Alleged* Inhalation or Ingestion of "Silica" or "Silica-Related Dust"

The determination of whether the insurer owes a duty to defend must be "made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Barbara B.*, 4 Cal.4th at 1081.[9] "[T]he duty to defend is broader than the duty to indemnify. *Montrose Chem. Corp. of Cal. v. Superior Court*, 6 Cal.4th 287, 295, 299 (1993). Thus, "[w]here there is a duty to defend, there *may* be a duty to indemnify, but where there is no duty to defend, there *cannot be* a duty to indemnify." *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal.4th 945, 958 (2001). Here, a comparison of the TAC to the Silica/Dust Exclusion dictates a determination that coverage is precluded. See, e.g., *Hanover American Insurance Co.*, 2025 WL 1090925 at *5 (granting judgment on the pleadings under motion to dismiss standard based on application of an identical Silica/Dust Exclusion).

The Silica/Dust Exclusion states *"[t]his insurance does not apply to: … 'Bodily injury' arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust'*." [See, e.g., Doc. 1-1, p. 60, § A.2.a.] Significantly, the plain language of the exclusion does not require the "actual" inhalation or ingestion of silica/dust – but is satisfied merely by "alleged" "threatened" or "suspected" ingestion.

Further, the Silica/Dust Exclusion commences with the phrase: "'Bodily injury' *arising, in whole or in part, out of*." The phrase "arising out of" is "ordinarily understood to mean 'originating from[,]' 'having its origin in,' 'growing out of' or

---

[9] California law governs this action and Hausys cites exclusively California law cases in its Counterclaim. [Doc. 23, pp. 22:1-13, 22:21-23:10, and 23:26-24:22, ¶¶ 39, 40, 42, 43, 46, and 47.]

41595792.9

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

'flowing from' or in short, 'incident to, or having connection with.'" *Davis v. Farmers Ins. Group*, 134 Cal.App.4th 100, 107 (2005) (citations omitted). "It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal.App.4th 321, 328 (1999).

Under California interpretive principles the Silica/Dust Exclusion is plain, clear and enforceable. *AIU Ins. Co.*, 51 Cal.3d at 822 (standard). The Silica/Dust Exclusion sets forth a simple test to satisfy its application to a claim. There must be either "actual" or "alleged" exposure to "silica" or "silica-related dust." The definitions of the terms "silica" - "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds" – and "silica-related dust" - "a mixture or combination of silica and other dust or particles" - are clear and plain. [See, e.g., Doc. 1-1, p. 60.]

The Exclusion's use of the term "alleged" means that the exclusion applies to a lawsuit that *alleges* a plaintiff has inhaled or ingested silica or silica-related dust, *regardless of whether such allegations are true or not*. In the event of such allegations, the exclusion precludes coverage for both defense and indemnity of that lawsuit. *Certain Underwriters*, 24 Cal.4th at 958; see also, Doc. 1-1, p. 30, §I.1.a. ("we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.").

Silica exclusions have been ruled unambiguous under California law. *Hanover American Insurance Co,* 2025 WL 1090925 at *5; see also, *Mauro v. Ohio Security Insurance Co., 2021 WL 5040265 at *2-*4 (E.D. Penn. Oct. 29, 2021)* (under Pennsylvania law, district court held "[t]he [p]olicy unambiguously provide[d] that injuries due to inhaling silica dust [were] excluded from coverage.").

41595792.9

22

Thus, because the Silica/Dust Exclusion "is clear and explicit, it governs" and must be enforced as written. *Rosen v. State Farm Gen. Ins. Co.*, 30 Cal.4th 1070, 1074 (2003).

**B.**      **The Allegations of the Counterclaim, TAC, and Silica Lawsuits Establish Application of the Silica/Dust Exclusion**

The Counterclaim does not quote or cite to a single allegation of a complaint in a Silica Lawsuit other than the *Quiroz* TAC. Moreover, the Counterclaim admits that the Silica Lawsuits "generally allege, among other things, that LX Hausys is liable for bodily injuries allegedly caused by alleged exposure to harmful substances allegedly present in stone products allegedly manufactured by LX Hausys." [Doc. 23, p. 17:18-22, ¶ 18.]

It further pleads: "By way of example, in [*Quiroz*]," in performing fabrication work, Quiroz "was allegedly 'exposed to and inhaled stone dust containing silica and other toxins and carcinogens,' including 'aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium' as well as 'volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene) emitted from these products'" and "[a]s a result of that alleged exposure, plaintiff allegedly 'developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage.'" [Doc. 23, p. 17:23-18:11, ¶ 19.]

The only plausible reading of the Counterclaim is that the quoted allegations of *Quiroz* are an "example" of what the Silica Lawsuits "generally allege." Those allegations readily fall within the Silica/Dust Exclusion.

The TAC establishes Quiroz alleges bodily injuries arising from, at least in part, his alleged exposure to silica and other toxins released during the stone fabrication process which allegedly caused his "silicosis and other related injuries." [Ex. A, pp. 439:1-11 and 449:1-16, ¶¶ 1284-1286 and 1305-1308.] The TAC includes numerous

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

allegations relating generally to the dangers of silica including, for example, "silicosis is an occupational disease caused by inhalation of tiny particles of quartz" (e.g., crystalline silica). [Ex. A, pp. 61:14-17 and 437:9-10, ¶¶ 134 and 1280.] These allegations unquestionably establish the application of the Silica/Dust Exclusion.

Allegations to the same effect are made in support of Quiroz's other claims for Products Liability–Failure to Warn [Ex. A, pp. 451:9-452:19, ¶¶ 1315, 1317-1326], Product Liability–Design Defect [Ex. A, pp. 454:9-10 and 455:16-456:3:, ¶¶ 1333, 1342-1346], Fraudulent Concealment [Ex. A, pp. 457:25-26 and 460:11-463:17, ¶¶ 1355, 1358-1380], and Breach of Implied Warranties [Ex. A, pp. 465:8-466:20, ¶¶ 1388, 1390-1399].

In sum, the TAC may only be plausibly read as alleging bodily injury arising out of, at least in part, Quiroz's alleged exposure to silica and silica-related dust from Hausys' products. A word search of the TAC yields 1,170 hits for "silicosis," 905 hits for "silica," 1,003 hits for "quartz" (aka crystalline silica), and 892 hits for "dust." This contrasts with only 13 hits collectively for "volatile organic compound," "VOC," "VOCs," "semivolatile organic compound," "SVOC," and "SVOCs" – words seized out of context in the Counterclaim but barely registering in the TAC.

Consequently, coverage for *Quiroz*, the exemplar of a Silica Lawsuit is precluded. By extension coverage is also precluded for *Solano-Claustro*, *Garcia-Rosas*, and the other Silica Lawsuits given the Counterclaim's allegation that *Quiroz* is the example of what those actions "generally allege" and the corresponding allegations in *Solano-Claustro* and *Garcia-Rosas* which confirm that conclusion.

### C.    Absent the *Quiroz* Example, the Counterclaim Fails

Hausys' factual allegations relevant to exposure and causation are set forth in Section I. "The Underlying Bodily Injury Lawsuits" of the "General Allegations." [Doc. 23, pp. 17:10-19:25, ¶¶ 16-27.] The exposure and causation allegations are limited to paragraphs 18-22.

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9                                                          24

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

Paragraph 18 asserts only that the Silica Lawsuits allege Hausys "is liable for bodily injuries allegedly caused by alleged exposure to harmful substances allegedly present in *stone products* allegedly manufactured by LX Hausys." [Doc. 23, p. 16:18-22 (emphasis added).] That allegation supports application of the Silica/Dust Exclusion because it admits that it is Hausys' "stone products" which are at issue. In short, without the *Quiroz* example the Counterclaim does not meet the burden that it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

However, no factual allegations are quoted or cited from any Silica Lawsuit other than *Quiroz*. Paragraphs 19-22 are supported *only* by quotation of and citation to *Quiroz*. The only other allegations of the Counterclaim discussing exposure and causation, paragraph 37 and 38 [Doc. 23, pp. 20:14-28], merely restate without supporting quotations or citations the assertions made in paragraphs 20-22. Thus, if paragraphs 20-22 are implausible, so are paragraphs 37 and 38.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555. Absent an example which supports the Counterclaim's allegations, as opposed to *Quiroz* which does not, the Counterclaim cannot meet the facial plausibility test.

**D.    The Court Cannot Accept as True the Allegations of the Counterclaim Regarding the TAC Which Are Refuted by the TAC**

**1.    Standard**

Likely because the TAC's allegations so plainly fall within the ambit of the Silica/Dust Exclusion, the Counterclaim takes great liberties with the content and tenor of *Quiroz's* pleading in an attempt to paint outside the lines of the exclusion. But a District Court "need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Indeed, courts should not "accept as true

41595792.9                                    25

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Thus, an allegation of the Counterclaim which is merely characterizing the TAC's allegations -- cannot be accepted as warranted, reasonable, or plausible when it, in fact, contradicts the very allegations of the TAC.

For example, paragraphs 20-22 (and by extension 37 and 38) of the Counterclaim allege entirely implausible misstatements of the TAC's allegations.

### 2. The TAC Does Not Allege Quiroz Was "Separately Exposed" to Metals in Artificial Stone.

Hausys alleges in paragraph 20 of its Counterclaim, in part, that "separate from their alleged exposure to silica, most of the underlying plaintiffs alleges that they were separately 'exposed to other toxic substances in artificial stone,' …." [Doc. 23, p. 17:12-23, ¶ 20.] However, neither the word "separate" nor the word "separately" is ever used in the TAC to modify the terms "exposure" or "exposed." Nor are there such allegations in the *Solano-Claustro* or *Rodolpho* amended complaints.

A comparison of Counterclaim paragraph 20 to TAC paragraphs 95-97 makes clear the extent of the misstatement. The Counterclaim states:

> 20. … Indeed, **separate from their alleged exposure to silica, most of the underlying plaintiffs allege that they were separately** "exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders," and as a result, suffered "hypersensitivity pneumonitis characterized by granulomas in lung tissue" and "pulmonary fibrosis (scarring of the lung tissue)," both of which are "caused by many metals that are constituents of artificial stone, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese nickel, titanium, tungsten, and vanadium." E.g., Quiroz TAC ¶¶ 96–97.

41595792.9

26

[Doc. 23, p. 17:12-23, ¶ 20 (bold and underline emphasis added).

However, the TAC actually alleges:

95. **Cutting, grinding, drilling, chipping, edging, and/or polishing (collectively "fabricating") stone products produces large amounts of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic silicosis as well as lung cancer and various other silica-related diseases**.

96. **Fabrication workers who cut, grind, drill, chip, edge, and/or polish artificial stone products are not only exposed to high concentrations of respirable crystalline silica, but are also** exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders.

97. **In addition to crystalline silica,** pulmonary fibrosis (scarring of the lung tissue) is caused by many metals that are constituents of artificial stone, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium. **Some of these metals also cause an immunologic lung disease called** hypersensitivity pneumonitis characterized by granulomas in lung tissue **that also causes pulmonary fibrosis**.

[Ex. A, p. 32:8-20, ¶¶ 95-97 (bold and underline emphasis added).]

Hausys' insertion of the phrase "they were separately" before the phrase "exposed to other toxic substances in artificial stone" as used in paragraph 96 is not true to the TAC. The insertion conveys the opposite meaning of the TAC by deleting the phrase "**are not only exposed to high concentrations of respirable crystalline silica, but are also**" which immediately precedes "exposed to other toxic substances in artificial stone" – collectively an allegation of intertwined exposure.

41595792.9

27

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

Similarly, Hausys replaces another allegation of intertwined exposure and causation in the TAC - "**In addition to crystaline silica**, pulmonary fibrosis (scarring of the lung tissue) is" which precedes "caused by many metals that are constituents of stone," with the word "separately." This again is the opposite of the true allegations when viewed in context, especially as Hausys repeatedly deletes the phrases "also" to create the illusion of "separate" exposure and causation.

The only plausible reading of paragraphs 95 through 97 is to allege an exposure to dust composed of a mixture of the constituent elements of the artificial stone, including (foremost) silica and metals and resins, which collectively contribute to the same bodily injuries. This is consistent with the TAC's allegation of joint causation just two paragraphs later:

> 99. Workers fabricating artificial stone products often develop progressive massive fibrosis due to high concentrations of crystalline silica and other toxic constituents of artificial stone.

[Ex. A, p. 32:26-27, ¶ 99.]

The TAC repeatedly alleges intertwined exposure to silica and silica-related (or mixed) dust and joint causation of bodily injury. For example, the Second Cause of Action alleges:

> 1322. As a result of [QUIROZ's] exposure to the foregoing toxic stone products, silica, metals and other toxins within said stone products entered Plaintiff, CESAR MANUEL GONZALEZ QUIROZ's body.
>
> 1323. Plaintiff [QUIROZ], suffers from a specific illnesses [sic], to wit, silicosis as well as other related and consequential injuries as set forth herein.
>
> 1324. Each of the foregoing toxic stone products caused Plaintiff [QUIROZ's] silicosis, and his related and consequential injuries as set forth herein.

41595792.9

> 1325.    Each toxin, including silica and metals, that entered Plaintiff, [QUIROZ's] body was a substantial factor in bringing about, prolonging, and aggravating [QUIROZ's] silicosis and his related and consequential injuries.

[Ex. A, pp. 452:6-16, ¶ 13-22-1323.]

Thus, collectively, the allegations of the TAC establish Quiroz and the Silicosis Lawsuits are based upon allegations of "'Bodily injury' arising, in whole *or in part*, out of the … *alleged* … inhalation of, or ingestion of, 'silica' or 'silica-related dust'" sufficient for application of the Silica/Dust Exclusion.

### 3. The Counterclaim's Paragraph 21 Misstates That *Quiroz* Alleges Exposure to VOCs "Wholly Apart From Exposure to Silica"

Hausys alleges in paragraph 21 of its Counterclaim:

> 21. In addition (and wholly apart from their allegations of exposure to silica), the underlying plaintiffs allege that they were exposed to "volatile organic compounds (VOCs) …. Quiroz TAC ¶ 98. VOCs, which are gases, are neither silica nor silica-related dust and are different from silica and silica-related dust.

[Doc. 23, p. 17-18, ¶ 21 (emphasis added).]

This is also a misstatement of the allegations of the TAC. First, far from alleging VOC exposure "wholly apart from their allegations of exposure to silica" as the Counterclaim asserts, paragraph 98 instead pleads an exposure in conjunction with exposure to silica by stating "Fabricating artificial stone products *also* produces volatile organic compounds (VOCs) …." [Ex. A, p. 32:21-25, ¶ 98 (emphasis added).][10]

---

[10] The terms "volatile organic compound," "VOC," and "SVOC" collectively yield only 13 hits contained in just five of the TAC's 1402 paragraphs. [TAC, Ex. A, pp. 32, 56, 168, 276, and 414, ¶¶ 98, 111, 464, 783, and 1209.]

41595792.9

29

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

Moreover, the TAC plainly alleges that the silica, metals, and VOC exposure all occur together during the fabrication process and the bodily injury resulting from that exposure is all "silica-related." [Ex. A, pp. 56:21-57:2, ¶ 111 ("QUIROZ, was thereby exposed to and inhaled stone dust containing silica and other toxins and carcinogens, as well as artificial stone dust containing respirable crystalline silica [ ], metals [ ] and volatile organic compounds from polymeric resins and other binders [ ] emitted from these products") and p. 57:3-9, ¶ 112 ("As a direct and proximate result of his exposure to silica, metals and other toxins within said stone products … QUIROZ, developed lung disease").]

The TAC also alleges that (1) various artificial stone products, "when cut or ground with electric-powered tools, releases toxic volatile organic compounds (VOCs)", (2) that "[i]n 2019, the researchers from NIOSH further characterized the composition of emissions from sawing Corian® by collecting size-classified airborne dust samples for analyses of their aluminum contents, and conducting analyses of VOCs in the emissions and semi-volatile organic compounds (SVOCs) in the dust," and that (3) "Forum Quartz … requires much processing (including cutting, grinding, and polishing) before being installed as a countertop in customers' kitchens or bathrooms, *which processes release huge amounts of respirable crystalline silica dust, as well as volatile organic compounds and other toxic and fibrogenic substances that cause silicosis, lung cancer and other diseases among fabricators exposed to dust of this product in the course of fabricating countertops*." [Ex. A, pp. 168:15-17, 276:1-5, and 414:18-23, ¶ 464, 783, and 1209 (emphasis added).]

In sum, the TAC alleges that fabricating causes silica, "huge amounts of" silica dust, as well as exposure to silica-related dust and that the exposure contributes to silicosis and other related bodily injury. These allegations readily and entirely fall within the scope of the Silica/Dust Exclusion which requires only that "'Bodily injury' arising …*in part*, out of the … *alleged* … inhalation of, or ingestion of, 'silica' or 'silica-related dust'" (emphasis added).

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

30

Accordingly, Hausys' conclusory statements in paragraph 21 should be disregarded by the Court as contrary to the actual allegations of the TAC. *Sprewell*, 266 F.3d at 988; *In re Gilead Scis. Secs. Litig.*, 536 F.3d at 1055.

### 4. **Paragraph 22 of the Counterclaim Must Also Be Disregarded as Contrary to the Allegations of the TAC**

Paragraph 22 of the Counterclaim baldly asserts that one of Hausys' "stone products," "HIMACS," does not contain any silica. [Doc. 23, p. 18:4-7, ¶ 22 (citing to TAC ¶ 105).]" However, paragraph 105 of the TAC mentions HIMACS as one of three "stone products" of Hausys along with Quartz and Viatera. [Ex. A, p. 34:16-20.] No allegation is made in paragraph 105 that HIMACS does *not* contain silica. To the contrary, the TAC alleges all stone products contain crystalline silica. [See, e.g., Ex. A, p. 31:24-25, ¶ 93.] Thus, the contrary allegation seeking to characterize the TAC in paragraph 22 of the Counterclaim must be disregarded. *Sprewell*, 266 F.3d at 988.

### 5. **The Counterclaim's References to *Solano-Claustro* and *Garcia-Rosas* Cannot Cure its Deficiencies**

The amended complaints in the *Solano-Claustro* and *Garcia-Rosas* Actions are drafted by Metzger Law Group, which also drafted *Quiroz.* Indeed, all of the Silica Lawsuits have been filed by either Metzger Law Group and/or the Brayton Purcell firm who are co-counsel in many of the suits. Therefore unsurprisingly, the allegations in all of the Silica Lawsuits are largely identical. Each alleges that claimants as a result of their work with Hausys' "stone products" were exposed to "silica, metals and other toxins" and that as a result of this intertwined exposure they developed "silicosis and related and consequential injuries." [Ex. B, p. 200:19-22, ¶ 424; Ex. C, pp. 129:17-23, ¶¶ 339-340.] Accordingly, the Silica/Dust Exclusion applies to *Solano-Claustro* and *Garcia-Rosas,* and the rest of the Silica Lawsuits as well.

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

31

**E. Because Coverage is Precluded by the Silica/Dust Exclusion, All of Hausys' Counterclaims Fail**

The Insuring Agreements state Sompo "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." [Docs 1-1, p. 30 and 1-3, p. 60.] Thus, application of the Silica/Dust Exclusion defeats both defense and indemnity coverage. *Hanover American Insurance Co.*, 2025 WL 1090925 at *5.

Further, under California law a "bad faith claim cannot be maintained unless policy benefits are due." *Waller*, 11 Cal.4th at 36; *accord MRI Healthcare* Ctr. of *Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal.App.4th 766, 784 (2010). Accordingly, because Hausys cannot demonstrate coverage is owed under the Policies in the first instance, it likewise cannot state a claim for bad faith, and the claim for bad faith also fails. See *id.*; see also *Waller*, 11 Cal.4th at 35; *MRI Healthcare*, 187 Cal.App.4th at 784.

**V. CONCLUSION**

The allegations of *Quiroz*, *Solano-Claustro*, *Garcia-Rosas*, and by extension the Silica Lawsuits fall squarely within the ambit of the Silica/Dust Exclusion. *Hanover* American Insurance Co., 2025 WL 1090925 at *5. No plausible argument for a contrary result can be made given the Silica Lawsuit allegations before the Court. Dismissal is appropriate.

There also is no basis for leave to amend because the allegations of the Silica Lawsuits are beyond Hausys' control. Accordingly, Sompo respectfully requests that this motion be granted with prejudice.

Respectfully submitted,

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

32

Dated:  September 24, 2025          CLYDE & CO US LLP

By:  */s/ Susan Koehler Sullivan*
    Susan Koehler Sullivan / Alec H. Boyd
    Brett C. Safford / Ruimiao Du
    Robert Mangino (*pro hac vice*)
    Attorneys for Plaintiff
    SOMPO AMERICA INSURANCE
    COMPANY (formerly known as Sompo Japan
    Insurance Company of America)

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358 7600

41595792.9

33